UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL THOMAS
BAXTER,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 1:17-cv-11960
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 16), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 19),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, Daniel Thomas Baxter, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 16), the Commissioner's cross-motion for summary judgment (DE 19), and the administrative record (DE 9).

### A.    Background and Administrative History

Plaintiff alleges his disability began on April 30, 2014, at the age of 32.  (R. at 123.)  He lists several conditions (right knee "pens" and "fracture of lateral malleolus, [open reduction and internal fixation] right ankle") that limit his ability to work.  (R. at 149.)  His application for SSI benefits was denied on July 15, 2014.  (R. at 78-88.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 89-91.)  ALJ Patricia S. McKay held a hearing on November 23, 2015.  (R. at 24-77.)  She issued an original opinion on March 21, 2016 and a revised opinion on May 5, 2016, each of which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 366-381, 9-23.)  On April 26, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6, 183-187.)  Thus, ALJ McKay's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 20, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 240 pages of medical records, all of which was available to the ALJ at the time of her May 5, 2016

decision.  (R. at 18, 188-443, 382-443 [Exhibits 1F – 7F].)  These are including in the record in two separate transcripts.  (DEs 9 & 10.)  They will be discussed in detail, as necessary, below.

### C.     Hearing Testimony

#### 1.     Plaintiff's Testimony

Plaintiff testified at the November 23, 2015 hearing, when he was 34 years old.  (R. at 30-63.)  The Court will forego further summary of his testimony here and will only refer to it as necessary below.

#### 2.     Vocational Expert Testimony

Vocational expert (VE) Pauline Pegram testified at the hearing, providing answers to several hypothetical questions.  (R. at 64-75, 167-169, 177-178.)   Of particular pertinence is her testimony that a person with Plaintiff's RFC (as eventually found by the ALJ) could perform work as an inspector/tester/sorter, a receptionist/information clerk, a document preparation clerk, and an address clerk, of which there were plentiful jobs in the national economy. (R. at 20-21, 65-68.)

### D.     The Administrative Decision

On May 5, 2016, ALJ McKay issued her decision.  (R. at 9-21.)  Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 5, 2014, the application date.  (R. at 14.)  At **Step 2**, the ALJ found that

3

Plaintiff had the following severe impairments:  history of gunshot wound to right knee/lower extremity; right bimalleolar ankle fracture, status-post ORIF, *i.e.*, open reduction with internal fixation[1] (with subsequent removal of hardware) with neuropathy; and right ankle osteoarthritis.  (*Id*. at 14-16.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 16.)  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb stairs, crouch, crawl, kneel, stoop and bend.  The claimant should avoid workplace hazards such as dangerous, moving machinery and unprotected heights, and is unable to climb ladder, ropes and scaffolds.  The claimant is unable to operate foot controls with his lower extremities and needs to be limited to low stress jobs, which is work that is self-paced and not a production rate, and which is not in tandem with co-workers.

(R. at 16-19.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 19-20.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

---

[1] *See,* https://hcahealthcare.com/hl/?/539804/Open-Reduction-and-Internal-Fixation-Surgery (Last Visited July 20, 2018).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

(R. at 20-21.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 5, 2014, the date the application was filed.  (R. at 21.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff sets forth five arguments, each of which challenges the assessed mental limitations. (DE 16 at 3, 11-19.) The Commissioner argues, among other things, that the ALJ's mental RFC assessment is supported by substantial evidence. (DE 19 at 3, 7-27.)

### 1.    The severity of Plaintiff's mental impairments

At Step 2, the ALJ determined that Plaintiff had several "non-severe medically determinable impairments[,]" including depression and anxiety, on the basis that "they do not represent more than a minimal limitation in the claimant's ability to perform basic work activities."  (R. at 14-16.)  In arriving at these conclusions, the ALJ relied upon the May 1, 2014 notes from DMC Sinai Grace Hospital (R. at 192), Plaintiff's June 30, 2014 function report (R. at 155-162), the August 5, 2015 notes from Bloomfield Medical Center (R. at 279), the November 19, 2015 integrated biopsychosocial assessment notes by Caritta Hall, M.A., L.L.P., a limited license psychologist (R. at 337), and Plaintiff's November 23, 2015 hearing testimony (R. at 24-77).

### a.    20 C.F.R. §§ 404.1503(e), 416.903(e)

According to Plaintiff, "evidence indicates the existence of a mental impairment," and "no psychological or psychiatric consultative evaluation was performed."  (DE 16 at 11-14.)  In so doing, Plaintiff cites his hearing testimony and the assessment notes of therapist Hall.  (DE 16 at 13-14, R at 48-49, 57-58.)  As to "initial determinations for mental impairments," 20 C.F.R. §§ 404.1503, 416.903 provides:

> An initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a

mental impairment, will be made only after every *reasonable effort* has been made to ensure that a *qualified psychiatrist or psychologist* has completed the medical portion of the case review and any applicable residual functional capacity assessment. If the services of *qualified psychiatrists or psychologists* cannot be obtained because of impediments at the State level, the Commissioner may contract directly for the services. In a case where there is evidence of mental and nonmental impairments and a *qualified psychologist* serves as a psychological consultant, the psychologist will evaluate only the mental impairment, and a physician will evaluate the nonmental impairment.

20 C.F.R. § 404.1503 (effective Sept. 6, 2007 to Mar. 26, 2017) (emphases added).

Plaintiff's reliance upon this regulation is misplaced. As this Court has previously explained:

In the view of the undersigned, plaintiff misinterprets 20 C.F.R. § 404.1503(e), which applies only to initial determinations finding mental impairments. That is, this regulation requires a psychiatrist or psychologist to review the record before the Commissioner can make the *initial decision* on a benefits claim and this regulation is unrelated to consultative examinations after that decision and before the hearing. *Spuhler v. Colvin*, 2014 WL 4855743, at *18 (E.D. Mich. June 17, 2014), report and recommendation adopted in part, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014) (citing *Mays v. Colvin*, 2013 WL 5797681, at *4 (N.D. Ohio Oct. 28, 2013)). Nothing in plaintiff's application would have suggested the need for a review by a psychiatrist or psychologist. Plaintiff identified musculoskeletal pain, glaucoma, fibromyalgia, osteopenia, degenerative disc disease, possible pancreatitis, migraines Vitamin D malabsorption, and low bone density as his medical conditions. . . . . Moreover, the mere existence of a depression diagnosis mentioned in the medical records does not suggest that plaintiff necessarily had a determinable mental impairment or that it was even severe for purposes of step two. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (Mere diagnosis of a condition says nothing about the severity of a condition.). Here, there are scant medical records evidencing plaintiff's depression and only minimal evidence of treatment. On this record, the undersigned finds

no error in the ALJ's treatment of plaintiff's alleged mental impairment.

*Hudson v. Comm'r of Soc. Sec.*, No. 16-10032, 2017 WL 1030216, at *7 (E.D. Mich. Feb. 22, 2017) (Davis, M.J.) (emphasis in original), *report and recommendation adopted*, No. 16-10032, 2017 WL 1021072 (E.D. Mich. Mar. 16, 2017) (O'Meara, J.).  Here, Plaintiff's June 5, 2014 disability report does not list a mental health limitation among the medical conditions that limit Plaintiff's ability to work.  (R. at 149.)  Thus, Plaintiff's application did not "suggest[] the need for a review by a psychiatrist or psychologist."  *Hudson*, 2017 WL 1030216, at *7.[3]

Moreover, although the May 1, 2014 notes from an *orthopedic* consultation the day after an alleged assault indicate an observation of "anxiety," (R. at 193), other chart notes made under the categories of "psychiatric" and "neurologic" (included with other categories such as "genitourinary" and "musculoskeletal") dated May and June 2014 were unremarkable, including short descriptions such as "negative," "cooperative," "interacting appropriately," "alert," and/or "appropriate mood & affect."  (R. at 189, 197, 202, 257, 265, 269, 274.)  Also, his September 25, 2014 request for hearing by ALJ (which he appears to have completed without a representative), expresses disagreement with the SSI determination, because he is "physical[ly] disable[d][,]" and has "a blood c[l]ot in [his] right leg plate[,]" "two

---

[3] Plaintiff's counsel should have been well aware that the regulation at issue is only applied in such a limited fashion, as she represented the plaintiff and was the recipient of the 2017 adverse ruling on this issue in *Hudson*.

rods in [his] right ankle," and "PENS in [hi]s right knee."  (R. at 89.)  Thereafter,

Kerellos A. Nasr, M.D.'s notes from Plaintiff's August 17, 2015 visit report a past

medical history of depression and anxiety (R. at 355), and therapist Hall's

November 19, 2015 integrated biopsychosocial assessment, at which Plaintiff

presented for "his anxiety and depression . . . [,]" acknowledges that Plaintiff has at

least some suicide risk factors, as well as symptoms of "depression, anxiety and

PTSD[,]" and lists diagnoses of major depressive disorder and anxiety disorder (R.

at 335, 339, 347).  However, aside from the fact that a therapist is an "other

source," as opposed to an acceptable medical source, 20 C.F.R. §§ 404.1513(d)(1),

416.913(d)(1) (effective Sept. 3, 2013 – Mar. 26, 2017), Ms. Hall's report amounts

to "minimal evidence of treatment."  *Hudson*, 2017 WL 1030216, at *7.  In

addition, the timing is significant, as it is dated only four days prior to Plaintiff's

November 23, 2015 testimony.  *Colbert v. Comm'r of Soc. Sec.*, No. 2:15-CV-

13467, 2017 WL 1214187, at *5 (E.D. Mich. Feb. 10, 2017) (Patti, M.J.)

("Plaintiff offers no medical/psychiatric evidence to buttress her newfound

contention at the hearing that she suffers from mental health impairment(s)."),

*report and recommendation adopted*, No. 15-13467, 2017 WL 1018149 (E.D.

Mich. Mar. 16, 2017) (Edmunds, J.).

### b. Alleged misconstruction of Plaintiff's testimony

Whatever label he places upon this statement of error, Plaintiff challenges the ALJ's Step 2 statements that Plaintiff "testified that his medications help alleviate his depression and anxiety symptoms[,]" and "[t]reatment notes dated August 5, 2015, state[] that [Plaintiff's] depression and anxiety have improved." (R. at 15, DE 16 at 12-13.)

Plaintiff's claim that the ALJ misconstrued his testimony is unavailing.  (DE 16 at 16.)  Plaintiff testified that he recently started mental health treatment for anxiety and depression.  (R. at 45.)  Although he began this treatment on November 19, 2015, he had "been trying to get treatment since last year," and "they ended up kicking [him] out of the program because [he] couldn't find a good treatment place," apparently because "they wouldn't take [his] insurance."  (*Id.*)  Although he testified that the Prozac® was not working, he further testified that his doctor switched the medication several times, and, since she switched the medications, he had not felt suicidal thoughts or thoughts about hurting others, except for maybe once per month.  (R. at 48-49; *see also* R. at 58.)  Thus, even if the efficacy of Plaintiff's panic attack medication is unclear (R. at 58), there is at least some truth to the ALJ's statement that Plaintiff's medication(s) help(s) "alleviate his depression and anxiety symptoms[.]"  (R. at 15.)

Furthermore, the August 5, 2015 notes from Bloomfield Medical Center – apparently signed by Jessica K. Uppal, C.N.P. - do, in fact, state "having

depression/anxiety but improved." (R. at 279; *see also* DE 19 at 11.)[4] Thus, the

ALJ properly construed this evidence at Step 2.

### c.    SSR 96-3p and Conclusion

Plaintiff argues that the ALJ failed to follow the "slight abnormality"

standard when finding that Plaintiff's anxiety and depression were non-severe.

(DE 16 at 14-16.) The regulations provide guidance for "Considering Allegations

of Pain & Other Symptoms in Determining Whether A Medically Determinable

Impairment Is Severe." Specifically,

> . . . [a]t step 2 of the sequential evaluation process, an impairment or
> combination of impairments is considered "severe" if it significantly
> limits an individual's physical or mental abilities to do basic work
> activities; an impairment(s) that is "not severe" must be a *slight
> abnormality* (or a combination of *slight abnormalities*) that has no
> more than a minimal effect on the ability to do basic work activities.

SSR 96-3P, 1996 WL 374181 at *1 (S.S.A. July 2, 1996) (emphases added).

Here, too, Plaintiff relies upon therapist Hall's November 19, 2015

integrated biopsychosocial assessment (R. at 333-348 [Ex. 4F]) and Plaintiff's

November 23, 2015 testimony (R. at 48-49). (DE 16 at 15.) In other words,

Plaintiff testimony and Ms. Hall's notes appear to be the only pieces of evidence

upon which Plaintiff relies to challenge the ALJ's finding that Plaintiff's

---

[4] Certified Nurse Practitioners are not "acceptable medical sources," as defined by
the SSA. *See* SSR 06-03P, 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006); *Ripple
v. Comm'r of Soc. Sec.*, No. CIV.A. 11-13308, 2012 WL 3150814, at *7 (E.D.
Mich. July 3, 2012) (Whalen, M.J.), *report and recommendation adopted*, No. 11-
13308, 2012 WL 3149108 (E.D. Mich. Aug. 2, 2012) (Edmunds, J.).

depression and anxiety were "non-severe." (DE 16 at 11-16.) As noted in further

detail below, Plaintiff has not set forth a developed argument to challenge the

ALJ's negative credibility finding. (R. at 17-18.) Additionally, the Undersigned

notes that the ALJ found Plaintiff was mildly limited in the functional areas of

activities of daily living, social functioning, and concentration, persistence or pace

(CPP). (R. at 15.) Within the ALJ's Step 2 discussion of CPP, she accurately cites

Plaintiff's November 19, 2015 report that he did not have "[t]rouble concentrating

on things, such as reading the newspaper or watching television[.]" (R. at 15, 337.)

Plaintiff's Step 2 challenges fail to show that the Court should assess Plaintiff's

subjective version of his impairments or that the ALJ improperly considered

therapist Hall's November 19, 2015 notes. As noted above, therapist Hall is an

"other source," rather than an "acceptable medical source." 20 C.F.R. §§

404.1513(d)(1), 416.913(d)(1) (effective Sept. 3, 2013 – Mar. 26, 2017). As such,

her opinion "*may* reflect the source's judgment about some of the same issues

addressed in medical opinions from acceptable medical sources[,]" and its

evaluation "depends on the particular facts in each case." 20 C.F.R. §§

404.1527(f)(1), 416.927(f)(1) (effective Mar. 27, 2017) (emphasis added).

Moreover, given the fact that Plaintiff's June 5, 2014 application does not list a

mental impairment, coupled with the fact that Ms. Hall's November 19, 2015

assessment occurred just four days before the hearing, the ALJ was not unjustified

13

in having a healthy level of skepticism in her opinion concerning Plaintiff's mental health assertions.  (*See* R. at 149, 333-348, 15, 17, 18-19.)  As such, Plaintiff has failed to meet his burden to show error at Step 2.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

### 2.    Mental RFC

Even if the ALJ improperly determined that Plaintiff's depression and anxiety were "non-severe," the error is harmless if the ALJ properly considered these impairments in the remaining steps of the sequential evaluation.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").  *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.") (citing *Maziarz*, 837 F.2d at 244); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where Plaintiff "cleared step two of the analysis[,]" and the ALJ considered "severe and

non-severe impairments in the remaining steps[,]" "[t]he fact that some of

[Plaintiff's] impairments were not deemed to be severe at step two [was] legally

irrelevant.").

In any case, as required, the ALJ did take these non-severe, medically

determinable impairments into consideration and found that Plaintiff's mental RFC

required "low stress jobs," specifically, "work that is self-paced and not a

production rate," and also required work "which is not in tandem with co-

workers."  (R. at 16.)

### a.      SSR 96-8p and SSR 85-15

Plaintiff challenges the ALJ's consideration of Plaintiff's mental health

limitations within the RFC determination, directly referring to two Social Security

Rulings.  (DE 16 at 16-18.)  First, Plaintiff points out that:

> In assessing RFC, the adjudicator must consider limitations and
> restrictions imposed by all of an individual's impairments, even those
> that are not "severe."  While a "not severe" impairment(s) standing
> alone may not significantly limit an individual's ability to do basic
> work activities, it may--when considered with limitations or
> restrictions due to other impairments--be critical to the outcome of a
> claim.  For example, in combination with limitations imposed by an
> individual's other impairments, the limitations due to such a "not
> severe" impairment may prevent an individual from performing past
> relevant work or may narrow the range of other work that the
> individual may still be able to do.
> *****
> *Work-related mental activities* generally required by competitive,
> remunerative work include the abilities to:  *understand, carry out, and
> remember instructions; use judgment in making work-related*

> *decisions; respond appropriately to supervision, co-workers and work*
> *situations; and deal with changes in a routine work setting.*

SSR 96-8P, 1996 WL 374184 at *5-*6 (S.S.A. July 2, 1996) (emphases added).

Second, Plaintiff relies upon the SSA's guidance regarding the effects of non-exertional impairments on the occupational base:

> Where a person's only impairment is mental, is not of listing severity,
> but does prevent the person from meeting the mental demands of past
> relevant work and prevents the transferability of acquired work skills,
> the final consideration is whether the person can be expected to
> perform unskilled work. The basic mental demands of competitive,
> remunerative, unskilled work include the abilities (on a sustained
> basis) *to understand, carry out, and remember simple instructions; to*
> *respond appropriately to supervision, coworkers, and usual work*
> *situations; and to deal with changes in a routine work setting.* A
> substantial loss of ability to meet any of these basic *work-related*
> *activities* would severely limit the potential occupational base. This, in
> turn, would justify a finding of disability because even favorable age,
> education, or work experience will not offset such a severely limited
> occupational base.

SSR 85-15, 1985 WL 56857 at *4 (S.S.A. 1985) (emphases added).

### b.    The ALJ's mental RFC assessment

The ALJ considered Plaintiff's mental health limitations at several points

during the RFC assessment.  For example, citing Corey Voss, M.D.'s March 15,

2014 notes (R. at 244) and Plaintiff's November 23, 2015 hearing testimony (*see*

R. at 30-63), the ALJ found that Plaintiff's activities of daily living "require

significant physical and *mental* demands, which are not consistent with the degree

of limitation alleged by the claimant." (R. at 17 (emphasis added).) The ALJ also

opined:

> Overall, the undersigned finds that the degree of limitation the
> claimant is alleging with regard to his physical and *mental*
> impairments is not supported by a preponderance of evidence in the
> file. The facts in the record do not dispute that the claimant has
> conditions, which singly or in combination, may cause some
> limitations. However, the evidence does not indicate that the
> claimant's symptoms exist at the level of severity alleged by the
> claimant's testimony at hearing. Therefore the above residual
> functional capacity, as determined by the undersigned, gives adequate
> weight to the facts.

(R. at 18 (emphasis added).) Also, the ALJ assigned "little weight" to the Global

Assessment of Functioning score assessed by Ms. Hall, after noting that it opined

on an area reserved to the Commissioner and a GAF score "is of limited use in

assessing the severity of a mental impairment . . . [.]" (R. at 19.)[5] In the Social

---

[5] The Undersigned notes that Certified Nurse Practitioner Uppal's June 4 & 5,
2014 reviews of psychiatric systems were "negative" and her psychiatric physical
examination notes describe Plaintiff as "cooperative" with "appropriate mood &
affect." (R. at 189, 265, 274 [Ex. 1F].) In fact, it appears that Uppal (or another
member of Bloomfield Medical Center's staff) treated Plaintiff from that point
through September 2015. (R. at 277-302 [Ex. 2F].) Notes from the latter part of
this range - March 20, 2015 through September 2, 2015 - indicate treatment for
depression and/or anxiety. (R. at 278, 280, 282, 284, 286, 288.) However, as
discussed above, the ALJ expressly mentioned the August 5, 2015 notes at Step 2,
although at that point the ALJ did not expressly acknowledge them as authored by
Uppal. (*See* R. at 15, 279.) Moreover, while the ALJ assigned Uppal's September
2, 2015 SSI form opinion "little weight," albeit for her discussion of Plaintiff's
*physical* limitations, the Undersigned also notes that this form lists "anxiety
disorder" as one of the diagnosis resulting in the assessed exertional, postural and
manipulative limitations. (R. at 18, 330-331 [Ex. 3F].) Thus, the ALJ reviewed

Security context, this is correct. *See DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.

App'x 411, 415 (6th Cir. 2006).[6]

Ultimately, the ALJ found that Plaintiff's mental RFC required "low stress

jobs," in other words, "work that is self-paced and not a production rate," and also

required work "which is not in tandem with co-workers." (R. at 16.) As Plaintiff

points out, "the ALJ was arguably not required to *incorporate* mild limitations into

plaintiff's RFC," but "she was required to *consider* those limitations in formulating

plaintiff's RFC[.]" Plaintiff cites *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015

_____

other evidence reflecting treatment for depression and anxiety, even if he did not
cite it for that purpose.

[6] Specifically, the Sixth Circuit held in *DeBoard*:

> The [Global Assessment Functioning] score is a subjective
> determination that represents 'the clinician's judgment of the
> individual's overall level of functioning. We have previously held that
> the failure to reference a Global Assessment Functioning score is not,
> standing alone, sufficient ground to reverse a disability determination.

> Moreover, the Commissioner has declined to endorse the [Global
> Assessment Functioning] score for use in the Social Security and
> [Supplemental Security Income] disability programs, and has
> indicated that [Global Assessment Functioning] scores have no direct
> correlation to the severity requirements of the mental disorders
> listings. Accordingly, we have affirmed denials of disability benefits
> where applicants had Global Assessment Functioning scores of 50 or
> lower.

*DeBoard*, 211 F. App'x at 415 (quotation marks, internal and external citations
omitted).

WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) (O'Meara, J.) (*adopting report and recommendation* of Hluchaniuk, M.J.) in support.  (*See* DE 16 at 17-18.)  However, in *Biehl*, it was "not evident from the ALJ's opinion that she did so[,]" and the Court went so far as to note that "the ALJ's RFC assessment is silent as to plaintiff's mental limitations."  *Biehl*, 2015 WL 736366 at *21.  Thus, *Biehl* can hardly be likened to the instant case, where the ALJ:  (a) addressed at Step 2 and within the RFC determination certain pieces of evidence that commented upon Plaintiff's mental limitations, namely records from therapist Hall and certified nurse practitioner Uppal, neither of whom was an "acceptable medical source;" and, (b) ultimately adopted an RFC with mental health limitations.  The ALJ's consideration of treatment notes relating to Plaintiff's mental health, as well as the assessment of limitations to "low stress jobs, which is work that is self-paced and not a production rate," and to work "not in tandem with co-workers[,]" (R. at 16-19), reflects the ALJ's consideration of Plaintiff's depression and anxiety upon his ability to perform "work-related mental activities."  SSR 96-8p.

### c.    Plaintiff's arguments

Plaintiff contends that the ALJ failed to consider either the impact or effect of Plaintiff's depression and anxiety "on his ability to work."  (DE 16 at 16-18.)  In so doing, Plaintiff refers to his own testimony in the most general way, arguing that he "testified to having significant symptoms as listed above in response to

questions asked directly by the ALJ." (*See* DE 16 at 16.)  Plaintiff also contends

that "the ALJ does not discuss anywhere in the decision the medical evidence as

well as Plaintiff's testimony as it relates to" the various abilities involved in "work-

related mental activities."  (DE 16 at 18, SSR 96-8p.)  Plaintiff leaves the Court to

guess as to exactly what those questions and responses are, why they should have

resulted in a different evaluation of his ability to work or which medical records or

opinions are being relied upon (or should have been relied upon) in support.

Moreover, Plaintiff's statements of error do not expressly challenge the ALJ's

credibility assessment or application of 20 C.F.R. §§ 404.1529, 416.929 and SSR

96-4p, let alone cite to them.  Despite his statement that "nowhere in [the ALJ's]

decision does she address the symptoms [Plaintiff] testified to concerning his

depression and anxiety and how it would *[e]ffect* his RFC[,]" this is an

undeveloped and conclusory argument, which fails to supply record citations or

analysis supporting a more restrictive mental RFC assessment, such as further CPP

and social functioning restrictions.  (R. at 16-18 (emphasis in original).)  "'[I]ssues

adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.  It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to . . . put flesh on its

bones.'"  *Spiteri v. Colvin*, No. 14-14140, 2015 WL 7258749, at *3 (E.D. Mich.

Nov. 9, 2015) (Stafford, M.J.) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–

96 (6th Cir. 1997)) (citation and internal quotation marks omitted), *report and recommendation adopted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.).  Additionally, as set forth above, the ALJ did not "misconstrue" Plaintiff's testimony about the efficacy of his medication upon his depression and anxiety symptoms, even though Plaintiff claims otherwise.  (DE 16 at 16.)

Plaintiff also takes issue with the fact that there is no mental RFC in the record, nor is there a psychological or psychiatric consultative examination.  Yet, the ALJ gave "little weight" to the treating therapist's opinion that Plaintiff was "incapable of working."  (DE 16 at 19.)  This argument is also unavailing.  Aside from the foregoing discussion of 20 C.F.R. §§ 404.1503(e), 416.903(e), Plaintiff's statements of error do not expressly challenge the ALJ's consideration of the opinion evidence or application of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

### d.    Summary

Plaintiff speculates that his symptoms from depression and anxiety "*could cause him to be off task greater than 15% of the day . . . [,]*" which the Court recognizes would likely be work "preclusive."  (DE 16 at 16 (emphasis added), R. at 72-73.)  With, as Plaintiff puts it, "absolutely no mental RFC findings in the record[,]" Plaintiff claims his case should be "remanded for a proper evaluation of Plaintiff's mental health condition including the obtainment of a mental RFC."

(DE 16 at 19.)  However, Plaintiff's arguments regarding the ALJ's treatment of his anxiety and depression within the RFC assessment are ineffective, as outlined above.  As such, Plaintiff has failed to meet his burden to show error between Steps 3 and 4.  *Walters*, 127 F.3d at 529.  Furthermore, despite the above-described limitations to the evidence supporting Plaintiff's mental health claims, the ALJ included RFC limitations that in essence address social functioning and CPP.  Thus, the mental RFC assessment is supported by substantial evidence.

## G.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 24, 2018          s/*Anthony P. Patti*
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 24, 2018, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti

23